[C. A. No. 146. Appellate Department, Superior Court, Los Angeles County.—July 3, 1930.]

ANNANDALE GOLF CLUB (a Corporation), Respondent, v. BERTRAM E. SMITH, Appellant.

(1 Cal. Supp. 71.)

Freston & Files and C. M. Hanson for Appellant.

O'Melveny, Tuller & Myers, Graham L. Sterling, Jr., and C. E. Christopher for Respondent.

McLUCAS, P. J.—This is an action brought to recover the payment of club dues from a suspended member. Judgment was granted to plaintiff in the sum of $566.75 and interest. Defendant appeals from the judgment.

The facts are not in dispute. It was stipulated that the amount of the claim was unpaid and correct, if defendant be liable; that plaintiff club was a corporation organized November 29, 1916, under title XXII of the Civil Code (sections 653t–653zd) as a noprofit organization; that defendant was a regular member of the plaintiff club under a membership purchased by him January 11, 1921; that he was suspended August 31, 1926, by reason of nonpayment of dues; that defendant never resigned from membership; that on November 11, 1928, defendant tendered to plaintiff the sum of $57.49 to cover indebtedness to plaintiff up to August 31, 1926, and interest. The tender was made on the condition that the defendant would not be held liable for dues accruing between September 1, 1926, and November 10, 1928. This conditional tender was refused by the club and action was brought in December, 1928. Defendant paid no dues subsequent to June 1, 1926, and testified that he ceased to use the facilities of the club on July 1, 1926, and thereafter enjoyed none of its privileges.

The plaintiff club was organized under the provisions of title XXII of the Civil Code relating to nonprofit co-operative corporations, which give such a corporation a wide power of control over the membership and rights of the members.

By the terms of section 653u of the Civil Code, such corporations shall not issue capital stock, but shall issue a membership certificate to each member. Any person "may become a member of such corporation upon such terms and conditions as to the membership, and subject to such rules and regulations as to their, and each of their, contract and other rights and liabilities between it and the member, as the said corporation shall prescribe in its by-laws". The by-laws of the club, which were received in evidence, provide that there shall be two classes of membership, regular and special; that regular members shall be those persons named as incorporators, together with those who shall be duly elected regular members and shall own a club membership; that certificates of membership shall be issued upon the payment of the membership fee "*and shall be subject to all the by-laws then in force, or thereafter adopted, and such by-laws . . . shall be considered as an essential part of the contract of membership between club and such member*" (italics ours); that a certificate of membership shall be sold and transferred by an indorsement to any candidate for membership who has been elected by the board of directors, and paid a transfer fee of $250.00, assumed the annual dues and paid all other obligations of the assignor to the club; that no resignation of a member shall be effective until accepted by the board of directors, nor shall the same be accepted while such member is in anywise indebted to the club nor until he has assigned and delivered to the club his certificate of membership; that each regular member becoming such subsequent to September 20, 1920, shall pay a membership entrance fee of $1,000; that each regular member shall pay regularly yearly dues of $180, payable in monthly installments on the first day of each and every month; that on or before the tenth day of each month a statement shall be mailed to each member, showing the amount of all indebtedness to the club and including a statement of all dues payable; that the name of any member failing to pay his account before the first day of the next succeeding month shall be posted in the clubhouse; that "*any member . . . failing to pay his account in thirty days after his name has been posted as aforesaid, shall automatically be suspended until such indebtedness is paid*" (italics

ours) ; that the board of directors shall have power by two-thirds vote to expel a member and forfeit the membership of any member, for conduct liable to injure the welfare or character of the club, or in violation of the by-laws or established rules of the club, or when the dues are not paid; that such forfeiture shall be effective only in the event that to such members shall be paid the amount of the appraisal of such member's property interest in the corporation after deducting any indebtedness of the member to the club; that no member of the club shall advertise his membership for sale, "but any member desiring to offer his membership . . . for sale may receive from the secretary the names of applicants for membership, with whom he may negotiate a sale and transfer of his membership, subject to the by-laws and rules and regulations enacted by the board of directors".

It thus appears from the by-laws that the only means by which the club membership of the defendant could cease was either by (1) sale and transfer, (2) resignation accepted by the board of directors, (3) expulsion. There was no sale of defendant's membership, defendant did not resign, nor was he expelled. Under the by-laws defendant was automatically suspended until the payment of his indebtedness for nonpayment of dues. The dues were never paid. Defendant might also have been expelled for nonpayment of dues and payment made by the club for defendant's property interest, but such action was never taken, and defendant still retained his membership though suspended, subject to all the obligations thereof, including the payment of dues unless such suspension relieved defendant from all obligation to pay dues. The by-laws do not provide that a member shall cease to pay dues upon suspension for nonpayment. The language in the by-laws providing that any member failing to pay his account "shall automatically be suspended until such indebtedness is paid" necessarily implies reinstatement of the member upon payment of dues. Meanwhile the member enjoys all the privilegs and possesses all the rights of membership except social privileges. Social clubs use dues for operating expenses, for maintaining the club property and for capital investment, such as payment of the funded debt, making improvements and acquiring additional property. The property

rights which the defendant continued to have after suspension were continually being preserved and probably being enhanced with money paid as dues by other members. The defendant could not relieve himself from the obligation to pay dues without surrendering these property rights.

In so far as we are able to learn this is a case of first impression in California, but cases in other jurisdictions recognize the validity of by-laws requiring the payment of dues during suspension. In the case of *Palmetto Lodge* v. *Hubbell,* 2 Strob. (S. C.) 457 [49 Am. Dec. 604], the court upheld as valid and reasonable a by-law providing that a member whose dues remain unpaid for a specified period should be suspended and that on reinstatement he should "pay the amount standing against him at the time of his suspension, together with the whole sum to which he would have been subjected had he not been suspended".

The court said among other things (2 Strob. [S. C.] 462 [49 Am. Dec., p. 605]):

"By suspension one does not cease to be a member; and while a member, by law, and his express undertaking, the defendant continues liable to pay the contributions which the by-laws may require."

In 25 Ruling Case Law, 56, the following statements of law appear:

"The distinction between suspension and expulsion is frequently recognized in the by-laws of societies and clubs. Suspension is usually a temporary privation of rights and benefits; expulsion on the contrary is a disfranchisement, severing the connection between the expelled member and the organization. Ordinarily a suspended member may be reinstated on paying the amount charged against him but an expelled member can be readmitted only on the terms and conditions of a new member. By suspension one does not cease to be a member."

*Boston Club* v. *Potter,* 212 Mass. 23 [Ann. Cas. 1913C, 397, 98 N. E. 614], involved the suit of a club against a member for dues. The member claimed that he had resigned prior to the period for which the dues in question were charged, but the court held that the resignation was inoperative because of the fact that the member was indebted to the club at the time the resignation was received, the by-laws providing that only members not indebted to the club

might resign. The member further claimed that his membership had ceased *ipso facto* because of his failure to pay the dues for a period of two months, thus relieving him from further liability for such dues, but the court said:

"He could not by his own failure terminate the responsibility which he had assumed, though the club might have done so."

See, also, 19 Ruling Case Law, pages 1240, 1258 and 1270.

The foregoing authorities establish clearly as a matter of law that a suspended member of a club continues to be liable for dues, suspension merely having the effect of temporarily suspending the member's social privileges as a penalty to compel him to fulfill his obligations to the club. This is not only law, but it is just and equitable. There is no reason why a suspended member, who retains all his property rights, should not contribute his share toward maintaining the value of those property rights. Furthermore, by express provision in the by-laws, the member is obliged to pay dues so long as he remains a member, and the by-laws indicate, and appellant Smith admits that the suspension did not terminate his membership.

Appellant relies upon *Westchester Golf Club* v. *Pinkney,* 43 Misc. Rep. 338 [87 N. Y. Supp. 153]. The by-laws in that case provided that upon nonpayment of dues, the name of the member be dropped from the roll of the members, "unless his indebtedness should be paid within thirty days after notice in writing by the treasurer of the amount of the indebtedness in arrears for fifteen days after notice in writing by the treasurer and posting thereof".

It was held that, "though the defendant's membership, and consequent rights and liabilities, would not cease by the mere fact of his being in arrears, without more, but, on the contrary, some act on the part of the plaintiff was necessary to accomplish that result, still we think the act of the club in sending the defendant notice that he would be dropped unless he paid the dues before the date named, was a sufficient indication of its election, and warranted him in assuming that the intention so declared had been followed by the proper resolution of the board of governors".

We think this case is to be distinguished from the case at bar in that dropping from the roll of members is not synonymous with suspension. Moreover, it appears that

affirmative action was taken by the club in sending the defendant notice that he would be dropped unless he paid his dues before the date named, while in the case at bar there was no notice of suspension given or required to be given by the club. It was further stated in *Westchester Golf Club* v. *Pinkney, supra:* "Under the terms of the contract between the parties, as set forth in the above provisions of the by-laws, the defendant, of his own act, independent of any act of the club, could sever his membership, and escape liability for further dues, only by paying his entire indebtedness to date, and by presenting his resignation. Until he should do these two things, the club could hold him for the regular dues, whether he availed himself of its privileges or not."

In the present case appellant neither resigned nor paid his entire indebtedness to date of resignation.

As a further defense the defendant alleged that plaintiff was estopped to collect any dues from and after September 1, 1926, for the reason that in the month of May, 1926, the board of directors of plaintiff corporation adopted an arbitrary, unreasonable and improper rule that none of the memberships could be transferred for less than $1500; that at the time said rule was adopted the board of directors well knew that the market value of each membership was only $500, and that during the months of June and July, 1926, the defendant had consummated negotiations for the sale of his membership and had the same actually sold when the prospective purchaser discovered the arbitrary rule made by the board of directors, and refused to proceed with his purchase, and that said arbitrary rule prevented the defendant from disposing of his membership. It was stipulated that such resolution was adopted by the board of directors on May 24, 1926, and was rescinded in October, 1926; that on June 1, 1926, defendant listed for sale his membership at $1500, less a transfer fee of $250 and a war tax of $25, and that on December 9, 1926, defendant listed for sale his membership at the price of $625, plus transfer tax, less his house account; and that between June 1, 1926, and December 9, 1926, defendant made no demand upon plaintiff club for the transfer of his membership.

In view of the fact that the by-laws provide that subsequent to September 20, 1920, a regular member shall pay

an entrance fee of $1,000, it cannot well be said as a matter of law that the rule is arbitrary and unreasonable which requires a transfer fee of $1500. Appellant acquiesced in this action of the board of directors by listing his membership for sale at $1500 with the club on June 1, 1926. We find no evidence in the record to support the allegation that the market value of memberships was only $500 at the time said resolution was adopted, on May 24, 1926, nor is there evidence that such was the market value in October, 1926, although we do find evidence that memberships were listed as low as $500 in December, 1926. No proof of the actual value of memberships appears in the record. Neither do we find any provision in the by-laws for sale of a membership to one who is already a member of the club, as attempted by appellant. Section 11 of article II of the by-laws authorizes sale of memberships only to those who are candidates for membership and elected by the board of directors. Section 2 of article VI of the by-laws provides that any member desiring to offer his membership for sale "may receive from the secretary the names of applicants for membership with whom he may negotiate a sale and transfer of his membership, subject to the by-laws and rules and regulations enacted by the board of directors". The by-laws authorized the board of directors to amend the by-laws at any meeting of the board. The resolution of May 24, 1926, increasing the transfer fee to $1500 was a rule or regulation enacted by the board. We find no evidence in the record that appellant complied with the provisions of the by-laws and the rules and regulations of the board as authorized by sections 653u and 653w of the Civil Code in negotiating a sale of his membership and, therefore, conclude that respondent is not estopped to collect dues from appellant from and after September 1, 1926. It also should be noted that the answer fails to allege facts sufficient to constitute a plea in estoppel.

The judgment is ordered affirmed.

Shaw, J., and Bishop, J., concurred.